IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Rodessa Scoggins**, | ) | Civil Action No. 2:11-3028-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Honeywell International, Inc.**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendant, asserting a claim of race discrimination as well as retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and 42 U.S.C. § 1981.[1]  The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 11, 2012. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on August 9, 2012  The Defendant's motion is now before the Court for disposition.[2]

---

[1]Originally filed in the South Carolina Court of Common Please, this action was removed to this United States District Court by the Defendant on November 7, 2011.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[3]

Plaintiff is a former employee of the Defendant who suffered an injury while she was at work on September 21, 2009. See Defendant's Exhibit H (Plaintiff's Deposition, Exhibit 15). Shortly after Plaintiff's injury, she instituted a worker's compensation claim. See Plaintiff's Deposition, p. 105. In November 2010, Plaintiff also began the process of filing a charge of discrimination against the Defendant with the EEOC. See Plaintiff's Deposition, pp. 118-119. Plaintiff did not perfect this charge until February 11, 2011, with the Defendant then being notified of the charge raising claims of race discrimination and retaliation on or about February 23, 2011. See Defendant's Exhibit L. Thereafter, on March 1, 2011, Plaintiff settled her worker's compensation claim and also signed an Employment Release Agreement (the "Release"), resigning her employment and releasing all other claims she had or might have against the Defendant. See Defendant's Exhibit M; see also Plaintiff's Deposition, pp. 111-113.

The Employment Release Agreement Plaintiff signed provides in relevant part that Plaintiff was releasing the Defendant:

> from any and all claims, demands, actions, or causes of action that [Plaintiff] now has or may later acquire arising out of her employment with [the Defendant] and the termination of said employment as described herein, including, but not limited to, any claims, demands, actions, or causes of action arising under . . . the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, . . . and all other laws of the United States of America . . .
> \* \* \* \* \* \* \*
> [Plaintiff] acknowledges that she has read the RELEASE AGREEMENT in its entirety, that she has had the opportunity, if she so desires, to consult with an attorney, and that her signature below constitutes her acceptance of this RELEASE

---

[3]The undersigned has only set forth such facts and evidence as are necessary for issuance of this opinion. The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



AGREEMENT in its entirety.

Defendant's Exhibit M.

At the time Plaintiff signed the Release, she was represented by counsel. See Plaintiff's Deposition, pp. 112, 114.

## Discussion

Defendant argues in its motion for summary judgment, inter alia, that pursuant to the terms of the Employment Release Agreement signed by the Plaintiff, she released the claims she now asserts in this lawsuit, and that this case should therefore be dismissed. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

Plaintiff offers several arguments for why this Release should not prevent her from pursuing her claims in this lawsuit. First, Plaintiff argues that the Release she signed is not valid because it violates the provisions of the Older Workers Benefit Protection Act ("OWBPA"), which provides minimum requirements that must be met before an age discrimination claim can be waived. 29 U.S.C. § 626(f)(1). The Defendant concedes for purposes of summary judgment that the Release does not contain the minimum requirements under OWBPA, and therefore may not be sufficient to effect the release of an age discrimination claim. See Memorandum in Support of Summary



Judgment, pp. 9, 17-18. However, since it is undisputed that Plaintiff has not raised an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq., this deficiency is not a basis for voiding the release in this case. See Plaintiff's Deposition, p. 127. See also Madrid v. Phelps Dodge Corp., 211 Fed.Appx. 676, 680-681 (10th Cir. 2006)[Holding that the minimum requirements under OWBPA apply only to ADEA claims, not to other federal claims such as Title VII]; Chaplin v. NationsCredit Corp., 307 F.3d 368, 375 (5th Cir. 2002)["[T]he OWBPA . . . applies only to ADEA claims."]; Tung v. Texaco, Inc., 150 F.3d 206, 208-209 (2d Cir. 1998)(per curiam)[concluding that Plaintiff's waiver of his Title VII claims was knowing and voluntary despite the employer's noncompliance with the § 636(f) requirements applicable to his ADEA claims.]; Perez v. Faurecia Interior Systems, Inc., No. 08-4046, 2009 WL 2227510, at * 4 (D.S.C. July 22, 2009)[Dismissing only ADEA claim where release did not meet OWBPA requirements].

With respect to Plaintiff Title VII and § 1981 claims, in determining whether the Release is valid, the Court must look to the totality of the circumstances surrounding its execution and consider a number of factors, including but not limited to: (1) the clarity and specificity of the Release language; (2) the Plaintiff's education and business experience; (3) the amount of time the Plaintiff had for deliberation about the Release before signing the Release; (4) whether the Plaintiff knew or should have known her rights upon execution of the Release; (5) whether Plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the Release; and (7) whether the consideration given in exchange for the waiver and accepted by the Plaintiff exceeds the benefits to which the Plaintiff was already entitled



by law or contract.[4] Torrez v. Pub. Serv. Co. Of New Mexico, 908 F.2d 687, 689-690 (1st Cir. 1990); see also Cobb v. Potter, No. 04-128, 2006 WL 2457812 at * 4 (W.D.N.C. Aug. 22, 2006)(quoting Medical Air. Tech. Corp. V. Marwan Inv., Inc., 303 F.3d 11, 19 n. 4 (1st Cir. 2002)), [but deleting the Fourth Factor], aff'd, 2007 WL 2030546 at * 1 (4th Cir. July 16, 2007). The totality of circumstances test does not require that every element be met; rather, it only requires that after considering the totality of the circumstances, Plaintiff's waiver can be characterized as knowing and voluntary. Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 276 (1st Cir. 2002); Cobb, 2006 WL 2457812 at * 4. The question, then, on summary judgment is whether the evidence is sufficient to give rise to a genuine issue of fact as to whether, considering the totality of the circumstances, Plaintiff's waiver was knowing and voluntary.

With regard to the first element, the evidence as to the clarity and specificity of the Release language is clear. The Release is only one page in length and specifically states that Plaintiff waives any and all claims "arising under . . . the Civil Rights Act of 1964, as amended, . . . and all other laws of the United States . . . . " See Defendant's Exhibit M. The clarity of the Release is further supported by Plaintiff's testimony that, upon reading the Release (which Plaintiff testified at

---

[4]Plaintiff advocates a slightly different test for evaluating the totality of the circumstances, with the significant difference being the inclusion of a factor as to whether the Plaintiff actually read the release and considered its terms prior to signing it, and whether the signing of the Release was induced by improper conduct of the Defendant. See Plaintiff's Memorandum, p. 15. Plaintiff cites to the published decision of Pierce v. Atchison, Topeka and Santa Fe Ry. Co., 65 F.3d 562, 571 (7th Cir. 1995), to support inclusion of these factors under the totality analysis. However, the Court in Pierce stated, "[w] have previously held that a plaintiff who executes a release pursuant to the advice of independent counsel, or a party whose attorney actively negotiates the release, is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress. . . . Although we are not confronted with these facts in [sic] that instant case, nothing in our opinion should be read as altering these statements." Pierce, 65 F.3d at 571 n. 1. Here, the undersigned has addressed Plaintiff's arguments with regard to her failure to read the Release prior to signing it and whether any improper conduct was involved when discussing the factors cited hereinabove. See discussion, infra.



5

her deposition was not until several days after she had already signed it), she immediately understood that she was giving up any right to pursue any cause of action against the Defendant for anything having to do with her employment or the termination of her employment. See Plaintiff Deposition, p. 116. Although Plaintiff now argues in her brief that the Release "suspiciously" did not mention her pending Charge of Discrimination, Plaintiff fully understood (according to her own testimony) the import of the Release language. Further, the Release language specifically dealt with claims under Title VII and "all other laws of the United States" (which would include claims under § 1981). See Plaintiff Deposition, p. 116; see also Defendant's Exhibit M. There is no genuine issue of fact regarding the clarity and specificity of this Release.

With regard to the second element, Plaintiff graduated from high school and Trident Technical College and worked as a truck driver. See Plaintiff's Affidavit, Exhibit 3. There is no issue as to Plaintiff's literacy, and as previously discussed, Plaintiff herself testified that she immediately understood the language and import of the Release upon reading it. See Plaintiff Deposition, p. 116. Furthermore, Plaintiff was represented by counsel when she signed the Release, and she testified that prior to signing she went over it with her attorney (although she states the import of the release was not made clear to her). See Plaintiff's Deposition, p. 114. See also Morais v. Cent. Beverage Corp. Union Employees' Supplemental Ret. Plan, 167 F.3d 709, 714 (1st Cir. 1999)[Where employee has had advice from independent advisors it negates any disparity in education and business sophistication]. No genuine issue of fact is presented in this evidence with respect to whether Plaintiff's education and business experience prevented her from knowingly and voluntarily signing the Release.

With regard to the third element, Plaintiff argues in her brief that she was "not



provided any time to consider the agreement." See Plaintiff's Memorandum, p. 16.  However, the evidence before the Court reflects that Plaintiff met with her attorney prior to signing the release, and there is no evidence that the Defendant was either present at the time, or that any time demands were placed on Plaintiff that prevented her from being able to fully review the Release and consult with her attorney prior to signing.  See Plaintiff's Deposition, pp. 114-116.  To the extent Plaintiff may be attempting to assert that she was not provided adequate time *by her counsel* to consider the Release, that is not a ground to attack the validity of the Release.  See Butler v. Berkeley County School Dist., No. 98-369, 2000 WL 33158371 at * 4 n. 1 (D.S.C. Mar. 29, 2000)["To the extent that plaintiff suggests inadequate representation by his own attorney rendered his consent involuntary, such an allegation cannot be used to attack the integrity of [sic] the settlement and is a dispute purely between plaintiff and his attorney."].  Plaintiff also argues that she was in need of the large sum of money that she was receiving in settlement of her worker's compensation claim.  However, Plaintiff's economic hardship alone is not a legal basis for her to invalidate the Release on the basis of being under duress.  Melanson, 281 F.3d at 276 [noting that in a Title VII case, permitting such claims would "make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs, and the like."]; see also Cobb, 2006 WL 2457812 at * 6 [Difficult financial circumstances do not constitute duress to avoid the consequences of the waiver]; Lannan v. Reno, 1998 WL 90843 at *1 (7th Cir. 1998)["Duress 'is not shown by . . . a difficult bargaining position or the pressure of financial circumstances.'"](citation omitted); Dalton v. GMC, No. 05-727, 2005 WL 2654071 at * 9 (D.N.J. Oct. 17, 2005)[Financial ruin or economic hardship, alone, is not a legal basis for claiming duress].

        With regard to the fourth element, Plaintiff asserts that she did not read the Release

7



when she signed it and, therefore, did not know that she was waiving her rights with regard to her race claims. However, the Release itself, directly above where Plaintiff affixed her signature, contains an acknowledgment by the Plaintiff that she had read the Release in its entirety. See Defendant's Exhibit M. Further, Plaintiff has offered no evidence that the Defendant prevented her from reading the Release or even attempted to prevent her in any manner from reading or understanding the Release before signing, and under South Carolina law a person who signs a contract or other written document cannot avoid the effect of that document by claiming after the fact that he or she did not read it. Wachovia Bank v. Blackburn, 716 S.E.2d 454, 458 (S.C.Ct. App. 2011)["'A person signing a document is responsible for reading the document and making sure of its contents. . . . Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it.'"](quoting Regions Bank v. Schmauch, 582 S.E.2d 432, 440 (S.C.Ct.App. 2003)). Cf. Massachusetts Mutual Life Insurance Co. v. Heidary, No. 95-2725, 1996 WL 469903 at *3 (4th Cir. Aug. 20, 1996)[person with the capacity to understand a document is bound by his signature on it even if he didn't read it or have it read to him]; Morais, 167 F3d at 713 [Noting that where Release stated on its face in unambiguous language that Plaintiff had consulted with counsel prior to signing, "it would require a substantial departure from basic contract interpretative principles for [the Court] to validate [Plaintiff's] self-serving effort, years later, to generate a federal dispute by asserting "that he did not in fact receive such advice]; Dalton, 2005 WL 2654071, at * 10.

Even assuming for purposes of summary judgment that Plaintiff did not read the Release before signing, as she testified, the evidence clearly reflects that she either knew *or should have known* the Release's contents and her rights upon execution of the release. Plaintiff clearly could have read the Release at the time she signed it, and she concedes that had she done so she



would have known upon the reading of it that she was waiving all of her claims against the Defendant. See Plaintiff's Deposition, p. 116. Further, although Plaintiff argues that her counsel did not know that she had a race claim pending with the EEOC and did not advise her with regard to waiving her rights to those claims, the responsibility for either Plaintiff's own failure to make her counsel aware of her EEOC claims and/or her counsel's failure to advise her as to the extent of the waiver of her rights (assuming that in fact occurred) can not be shifted to the Defendant. Cf. Butler, 2000 WL 33158371 at * 4, n. 1. Therefore, even considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff either knew or should have known her rights upon the execution of the Release. See Wachovia Bank, 716 S.E.2d at 458; Regions Bank, 582 S.E.2d at 440; Massachusetts Mutual Life Insurance Co., 1996 WL 469903 at *3; cf. Merrill Lynch Bank USA v. Wolf, No. 09-734, 2010 WL 4959950 at * 6 (D.Ariz. Dec. 1, 2010)[Under New York law, parties cannot generally avoid the effect of a release on the ground that he didn't read it or know its contents]; Dalton, 2005 WL 2654071 at * 10 [Failure to read is not a ground to rescind a release where it was the result of carelessness instead of being induced not to read the document because of some stratagem, trick, or artifice by the party seeking to enforce the contract].

With regard to the fifth element, it is undisputed that Plaintiff was represented by counsel at the time she signed the Release, and when asked at her deposition - "Did you go over this [the Release] with your lawyer at the same time you went over the Workers' Compensation settlement?" - Plaintiff answered "Yes". See Plaintiff's Deposition, p. 114. Plaintiff also testified that she had a "full opportunity to review [the Release] with [her] attorney" before signing it. See Plaintiff's Deposition, p. 115. Hence, it is undisputed in the evidence that Plaintiff did have the benefit of counsel and that the Release clearly stated that she was waiving all rights with respect to



her claims in this lawsuit. Again, the Defendant is not responsible for any miscommunications or disputes between Plaintiff and her counsel. Butler, 2000 WL 33158371, at * 4, n. 1.

With regard to the sixth element concerning whether there was opportunity for negotiation of the terms of the Release before Plaintiff signed it, Plaintiff testified that there were negotiations with regard to her Worker's Compensation Claim; see Plaintiff's Deposition, p. 111-114; and while the parties do not point to any evidence in the record concerning the length of any negotiations leading up to Plaintiff signing the Release as to the remainder of her claims, Plaintiff does not assert that her counsel (or she) could not have further negotiated with regard to the Release. Rather, she argues that she did not know that it included any claims beyond her agreeing to not seek to return to employment with the Defendant, so she didn't ask her counsel to further negotiate. See also, Plaintiff's Deposition, pp. 114, 116. Of course, that is not what the Release says in plain type on its face, and it is also clear in the evidence that the entire process at issue involved a negotiated settlement with the Defendant of Plaintiff's claims. Therefore, even considered in the light most favorable to the Plaintiff, the evidence does not support an inference that there was no opportunity for the Plaintiff to negotiate the terms of the Release based upon the facts of this case.

With respect to the final element concerning whether the consideration given in exchange for the waiver and accepted by the Plaintiff exceeds the benefits to which the Plaintiff was already entitled by law or contract, it is undisputed that Plaintiff received $100.00 in addition to a large sum of money for settlement of her Worker's Compensation claim. See Plaintiff's Deposition, pp. 112-115. Although Plaintiff attempted to return the funds after she read the Release, the Defendant refused to accept them. While Plaintiff argues that this amount was insufficient because of her claim of lost wages, she would have had to sue and succeed on her underlying claim to establish that value.



At the time of her signing the Release, she did not have an amount for these claims that she was already entitled to by law or contract, and it is clear from the evidence that the Release was part of a global settlement of Plaintiff's claims, which netted Plaintiff a considerable sum of money in return for a complete release. Therefore, the facts do not support a finding that the amount Plaintiff received did not exceed the benefits to which she was entitled by law or contract at the time of the signing of the Release. See Wagner v. NutraSweet Co., 95 F.3d 527, 532 (7th Cir. 1996)["[C]onsideration is relatively easy to show. As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration."]

In sum, after a review of the evidence and applicable case law, the totality of circumstances in this case fails to demonstrate a genuine issue of fact that Plaintiff's waiver was not knowing, voluntary, and complete. Therefore, she waived the claims she is asserting against the Defendant in this case, and the Defendant is entitled to summary judgment.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 8, 2012
Charleston, South Carolina

11



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

